(6) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller, within the time specified in **paragraph 3N(1),** shall **(i)** disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and (ii) Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.

(7) Seller represents that all items included in the purchase price, unless Otherwise Agreed, **(i)** are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(6)**, and **(ii)** are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

**C. ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2); (ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

**10. ALLOCATION OF COSTS:**

**A. INSPECTIONS, REPORTS, TESTS AND CERTIFICATES: Paragraphs 3Q(1), (2), (3), and (5)** only determine who is to pay for the inspection, report, test, certificate, or service mentioned; **it does not determine who is to pay for any work recommended or identified in any such document. Agreements for payment of required work should be specified elsewhere in paragraph 3Q, or 3R, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA).** Any reports in these paragraphs shall be Delivered in the time specified in **paragraph 3N(1).**

**B. GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**

(1) **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be completed within the time specified in **paragraph 3N(4)** and paid by the Party specified in **paragraph 3Q(4)**. If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.

(2) **POINT OF SALE REQUIREMENTS:**

(A) Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by the Party specified in **paragraphs 3Q(5) and 3Q(6)** and any such repair, shall be completed prior to final verification of Property, unless Otherwise Agreed. Defensible space compliance shall be determined as agreed in C.A.R. Form FHDS. If Buyer agrees to pay for any portion of such repair, Buyer, shall **(i)** directly pay to the vendor completing the repair or **(ii)** provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.

(B) Buyer shall be provided, within the time specified in **paragraph 3N(1)**, unless Parties Otherwise Agree to another time period, a Copy of any required government-conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

(3) **REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.

(4) **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.

**C. HOME WARRANTY:**

(1) Buyer shall choose the home warranty plan and any optional coverages. Buyer shall pay any cost of that plan, chosen by Buyer, that exceeds the amount allocated to Seller in **paragraph 3Q(18)**. Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer and their cost.

(2) **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**

**11. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

**A. TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**

(1) Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).

(2) The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to **(i)** conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or **(ii)** complete any sections on all disclosures required to be completed by Buyer's Agent.

(3) Seller shall, within the time specified in **paragraph 3N(1)**, provide "Supplemental Disclosures" as follows: **(i)** unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; or **(ii)** if exempt from the obligation to provide a TDS, complete either an Exempt Seller Disclosure (C.A.R. Form ESD) or Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer.

(4) In the event Seller or Seller's Agent, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.**

**B. LEAD DISCLOSURES:**

(1) Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").

(2) Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.

**C. HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: **(i)** a home hardening disclosure required by law; and **(ii)** a statement of features on the Property of which Seller is aware that may make the home vulnerable to wildfire and flying embers; **(iii)** a list of possible low cost fire hardening retrofits identifying which ones Seller has completed; and **(iv)** a final inspection report regarding compliance with home fire hardening if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).

**D. DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer **(i)** a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and **(ii)** an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).

**E. ELECTRICAL SYSTEM INSPECTION ADVICE DISCLOSURE:** For any transaction in which a TDS is required, Seller advises the Buyer as follows: "In a purchase of real property, it may be advisable to obtain an inspection by a qualified professional of the electrical system(s) of any buildings, including, but not limited to, the main service panel, the subpanel(s), and wiring. Substandard, recalled, or faulty wiring may cause a fire risk and may make it difficult to obtain property insurance. Limited electrical capacity may make it difficult to support future electrical additions to the building(s), such as solar generation, electric space heating, electric water heating, or electric vehicle charging equipment."

**F. WAIVER PROHIBITED:** Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1)**, **11B**, **11C**, **11D** and **11E** are prohibited by Law.

**G. RETURN OF SIGNED COPIES:** Buyer shall, within the time specified in **paragraph 3L(5)** OR **5 Days** after Delivery of any disclosures specified in paragraphs **11A**, **B**, **C,** or **D**, and defensible space addendum in **paragraph 11D**, whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.

**H. TERMINATION RIGHTS:**

(1) **Statutory and Other Disclosures:** If any disclosure specified in paragraphs **11A**, **B**, **C**, **D**, or **E**, or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.

(2) **Defensible Space Compliance:** If, by the time specified in **paragraph 11G**, Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

**I. WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers **(i)** to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR (ii)** to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR (iii)** to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

**J. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov**. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**K. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/**. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**L. NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**M. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

(1) Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).

(2) If the Property is a condominium or is located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR), unless Seller has otherwise Delivered to Buyer the most current version of any such document: **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; and **(vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**N. SOLAR POWER SYSTEMS:** For properties with any solar panels or solar power systems, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all known information about the solar panels or solar power system. Seller shall use the Solar Advisory and Questionnaire (C.A.R. Form SOLAR).

**O. SEPTIC TANK, WELL, PROPANE TANK:** For properties with any septic tank system(s), or well(s), or propane tank(s), Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all known information about such system(s) and/or item(s). Seller shall use the Septic, Well, and Propane Tank Questionnaire (C.A.R. Form SWPI-Q).

**P. BALCONIES, EXTERIOR STAIRWAYS AND OTHER ELEVATED ELEMENTS:** For properties with any building containing 3 or more dwelling units with elevated balconies, stairways or other elements, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer the Wooden Balcony and Stairs Addendum (C.A.R. Form WBSA) and comply with its terms.

**Q. KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact insurer to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

**A.** Buyer shall, within the time specified in **paragraph 3L(3)**, have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

**B.** Buyer Investigations include, but are not limited to:

(1) Inspections regarding any physical attributes of the Property or items connected to the Property, such as:

(A) A general home inspection.

(B) An inspection for lead-based paint and other lead-based paint hazards.

(C) An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).

(D) Any other specific inspections of the physical condition of the land and improvements.

(2) Investigation of any other matter affecting the Property, other than those that are specified as separate contingencies. Buyer Investigations do not include, among other things, an assessment of the availability and cost of general homeowner's insurance, flood insurance, and fire insurance. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more.

**C.** Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling through stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

**D.** Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer. Buyer shall, **(i)** by the time specified in **paragraph 3L(3)**, complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and **(ii)** by the time specified in **paragraph 3L(3)** or **3 Days** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan, which Buyer shall Deliver to Seller at the earlier of: **(i)** removal of all Buyer's contingencies; or **(ii)** cancellation of this Agreement.

**E. Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall**: (i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.


Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com 16708 Chaplin

**13. TITLE AND VESTING:**

**A. PRELIMINARY REPORT:** Buyer shall, within the time specified in **paragraph 3N(1)**, be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

**B. CONDITION OF TITLE:** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

**C. DISCLOSURE TO BUYER:** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**D. SELLER DELIVERY OF INFORMATION:** Seller shall, within **7 Days** after request, give Escrow Holder necessary information to clear title.

**E. DEED AND VESTING:** Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

**F. TITLE INSURANCE POLICY:** Buyer shall receive an "ALTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and buyer. Escrow Holder shall request this policy. If a ALTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between an ALTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR-B, CR-S or CC).**

**A. SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible to provide to Buyer as specified in **paragraphs 7A, 9B(6), 10, 11A, 11B, 11C, 11D, 11I, 11L, 11M, 11N, 11O, 11P, 13A, 13C, 24, and, if applicable and unless Otherwise Agreed, Reports Seller is obligated to provide under C.A.R. Form SWPI-C**.

**B. BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION**

(1) Buyer has the time specified in **paragraph 3** to: **(i)** perform Buyer Investigations; review all disclosures, Reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(6)**, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11**.

(2) Buyer may, within the time specified in **paragraph 3L(3)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.

(3) Buyer shall, by the end of the times specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR-B or CC). Buyer is advised not to remove contingencies related to review of documents until after the documents have been Delivered. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under **paragraph 11H**.

(4) **Continuation of Contingency:** Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 14C**, Buyer retains the right, in writing, to either **(i)** remove remaining contingencies, or **(ii)** cancel this Agreement based on a remaining contingency. Once Buyer's written removal of contingency is Delivered to Seller before Seller cancels, Seller may not cancel this Agreement based on that contingency pursuant to **paragraph 14C(1)**.

**C. SELLER RIGHT TO CANCEL: (must be done in writing and signed by Seller)**

(1) **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by **paragraph 3D(1)** or **3D(2)** or if the funds deposited pursuant to **paragraph 3D(1)** or **3D(2)** are not good when deposited; **(ii)** Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3); (iii)** Deliver a notice of FHA or VA costs or terms, if any, as specified by **paragraph 5C(4)** (C.A.R. Form RR); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B** or **6A**; **(v)** Deliver a letter as required by **paragraph 6B**; **(vi)** In writing assume or accept leases or liens specified in **paragraph 8H**; **(vii)** Return Statutory and Other Disclosures as required by **paragraph 11G**; **(viii)** Cooperate with the Reporting Person's effort to collect information as required by **paragraph 19D; (ix)** Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 24**; **(x)** Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraph 29**; or **(xi)** Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.

(3) **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

**D. BUYER RIGHT TO CANCEL: (must be done in writing and signed by Buyer)**

(1) **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.

(2) **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.

(3) **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in **paragraph 8**, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

**E. NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: **(i)** be in writing; **(ii)** be Signed by the applicable Buyer or Seller; and (iii) give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than **2 Days** prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 14**, except for Close of Escrow which shall be Delivered under the terms of **paragraph 14G**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void. However, if the notice is for multiple items, the notice shall be valid for all contingencies and contractual actions for which the Delivery of the notice is within the time permitted in the Agreement and void as to the others. Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.

**F. EFFECT OF REMOVAL OF CONTINGENCIES:**

(1) **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of Reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for the non-delivery of any Reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

(2) **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: **(i)** satisfied themselves regarding such contingency, **(ii)** elected to proceed with the transaction; and **(iii)** given up any right to cancel this Agreement based on such contingency.

**G. DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: **(i)** be Signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE. After the DCE period has lapsed, any subsequent cancellation must be Delivered in writing and signed by the Party cancelling the Agreement. If Seller cancels based on DCE and Buyer still has a contingency, Seller shall authorize the return of Buyer's deposit except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation, provided Buyer is acting in good faith to satisfy the contingency.

**H. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less **(i)** fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and **(ii)** any escrow fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. **A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.**

**15. REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**16. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to **paragraph 7B**; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments to third parties, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS AND AGENTS:**

**A. COMPENSATION:**

(1) **Broker Compensation:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. The amount of compensation, if a percentage, will be based on the final purchase price. Buyer is advised that Buyer's Broker should not receive compensation from any source in excess of the amount in the buyer representation agreement. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

(2) **Third party beneficiary:** Seller acknowledges and agrees that Buyer's Broker is a third-party beneficiary of this Agreement and may pursue Seller for failure to pay the amount specified in this Agreement.

**B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

**A. ESCROW INSTRUCTION PARAGRAPHS: The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11I, 11M(2), 13 (except 13C), 14H, 17, 18A, 19, 23, 24, 25, 28, 32,** and **33.** The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

**B. ESCROW HOLDER GENERAL PROVISIONS:** Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2)**. Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days**, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3**, **8**, **10**, **11**, or elsewhere in this Agreement.

**C. COPIES; STATEMENT OF INFORMATION; TAX WITHHOLDING INSTRUCTIONS:** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance**. Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11I**, Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11I**.

**D. FEDERAL RESIDENTIAL REAL ESTATE REPORTING:**

(1) **REPORTING RULE:** If in force, pursuant to rules issued by the Financial Crimes Enforcement Network ("FinCEN") of the U.S. Department of the Treasury ("Treasury"), a "Reporting Person" (typically the escrow or title company responsible for closing) is required to report to FinCEN certain information about the Buyer and Seller if the following conditions occur: **(i)** The property being purchased is real property with one to four residential units, or vacant land for which the transferee intends to build residential real property with one to four units, or shares in a cooperative housing corporation; **(ii)** the buyer is a legal entity or trust; and (iii) the buyer is making an "all-cash" purchase or financing the purchase through a lender that does not have an independent reporting obligation, such as a hard-money lender or seller financing.

(2) **CONTRACTUAL REQUIREMENTS:**

(A) The Reporting Person may request data from Buyer and Seller even if the reporting requirements are being legally challenged. Buyer and Seller shall, within **7 Days** after receiving a request for FinCEN information from the Reporting Person for the transaction, deliver to the Reporting Person all necessary information to satisfy the reporting requirements.
Buyer to pay for any charge made by the Reporting Person for such collection, and if applicable, reporting;

(B) Buyer and Seller agree to make a good faith effort to acquire such information from any entity, beneficial owner, trustee or signing party that is not Buyer or Seller;

(C) If the Reporting Person notifies a Buyer or Seller that the other has failed to provide such information, the performing Buyer or Seller may cancel after first giving the non-performing Buyer or Seller a notice to perform. Any Buyer or Seller who fails to provide the requested information for themselves may be in breach of contract.

(3) **ESCROW COMPLIANCE:** Buyer and Seller are advised that the Reporting Person is authorized not to close escrow if the requested information is not provided in full, regardless of whether due from Buyer or Seller or another person on their behalf.

**E. BROKER COMPENSATION:**

(1) **PAYMENT:** Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A**. If a Copy of the separate compensation agreement(s), including if applicable **paragraph 3G(3)** of this Agreement, is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). Buyer's obligation to pay Buyer's Broker shall be offset by any amount that Seller pays Buyer's Broker. Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A**, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.


Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com 16708 Chaplin

(2) **COMPENSATION DISCLOSURE:** Escrow Holder shall provide to Buyer a closing statement or other written documentation disclosing the amount of compensation paid to Buyer's Broker. Escrow Holder shall provide to Seller a closing statement or other written documentation disclosing: **(i)** the amount of compensation paid to Seller's Broker; and **(ii)** if applicable pursuant to **paragraph 3G(3)** or other mutual instruction of the parties, the amount paid by Seller for Buyer's Broker compensation. Escrow Holder's obligation pursuant to **paragraph 19E**, is not intended to alter any preexisting practice of Escrow Holder to issue, as applicable, joint or separate closing statements. Escrow Holder's obligation pursuant to **paragraph 19E** is independent of, but may be satisfied by, any closing statement mandated by Buyer's lender.

**F. INVOICES:** Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

**G. VERIFICATION OF DEPOSIT:** Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraph 5A(1) and** C.A.R. Form IDA. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

**H. DELIVERY OF AMENDMENTS:** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

**20. SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**21. MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be input into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years from when the listing was put into the MLS and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

**22. ATTORNEY FEES AND COSTS:** In any Legal Action between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 30A.**

**23. ASSIGNMENT/NOMINATION:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's wholly-owned entity or trust that exists at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first obtaining Seller's separate written consent to a specified assignee (C.A.R. Form AOAA). Buyer shall, within the time specified in **paragraph 3K**, Deliver to Seller any request to assign this Agreement. Seller shall not unreasonably withhold such consent. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Seller's withholding of consent shall be deemed reasonable if: **(i)** Buyer is to receive any monetary or other consideration for the assignment; **(ii)** Buyer makes any misrepresentation(s) to Seller about any aspect of the assignment; or **(iii)** Buyer Delivers an assignment request to Seller after the time specified in **paragraph 3K**. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is Buyer's wholly-owned entity or trust, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender stating assignee is preapproved or prequalified as specified in **paragraph 6B**. Should assignee fail to deliver such letter, Seller, after first giving assignee a Notice to Buyer to Perform, may terminate the assignment. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller. Parties shall provide any assignment agreement to Escrow Holder within **1 Day** after the assignment. Any nomination by Buyer shall be subject to the same procedures, requirements, and terms as an assignment, as specified in this paragraph.

**24. LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraphs 32** or **33** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California; and **(ii)** shall Deliver to the other Party and Escrow Holder, within **3 Days** after Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5)), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**25. DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:

**A. "Acceptance"** means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.

**B. "Agent"** means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B**.

**C. "Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.

**D. "As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.

**E. "Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.

**F. "C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.

**G. "Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.

**H. "Copy"** means copy by any means including photocopy, facsimile and electronic.



Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com 16708 Chaplin